Case number 20-5223, et al. American Federation of Labor and Congress of Industrial Organizations v. National Labor Relations Board, appellant. Mr. Thomas for the appellant, jurisdictional issues. Mr. Weiss for the appellant, merits issues. Mr. Ginsberg for the appellee. Good morning, counsel. Mr. Thomas, please proceed when you're ready. Good morning, Your Honor. May it please the Court, Paul Thomas for the National Labor Relations Board. This case presents a jurisdictional question of critical importance for the NLRB and the parties who appear before it. Namely, is this court's jurisdiction over challenges to rulemakings original or appellate? Under this court's decisions in Investment Company Institute and New York Republican State Committee, the answer is original. The NLRA's judicial review statute, Section 10-F, is ambiguous as to whether it covers rulemakings. Under those cases, ambiguity should be construed to avoid a bifurcated review process whereby some types of review go to the Court of Appeals and others to the district courts. Accordingly, we ask this court to convert this case to an original petition for review. Mr. Thomas, can you tell me why the board has changed its position on this jurisdictional issue? And I think the board doesn't contest that rulemakings, you know, challenges to rulemakings have always previously been brought in district court. So so why the you know, what's caused the board to rethink this jurisdictional question? So first, the premise of your question is correct, Your Honor. The board has certainly the prior prior challenges to rulemakings have proceeded in district court. I think the basis for the NLRB's change of views on this issue is largely down to the court's decision in New York's Republican State Committee and its re-emphasis on the the preferred avoidance of bifurcated judicial review proceedings. That case, I believe, issued after the most recent litigated NLRB. There's only been a few litigated NLRB rulemakings in the past, and it issued, I believe, after the most recent one of those. In that case, it says absent a firm indication that Congress so intended. Right. So so it's still so there might be a presumption, but the presumption only applies based on the text of the statute. That's correct, Your Honor. The presumption can be rebutted by by a firm indication on the part of the on the part of Congress that it intended for a bifurcated review structure to hold. And there are a number of this court's cases that find such a firm intent in the context of, for instance, statutes that specifically isolate rulemakings under certain provisions of the statutes and then implicitly exclude rulemakings under other parts of the statutes. But that's not the statute that we have here. The statute that we have here, by its terms, applies to final orders of the board, but it does not say, for instance, final unfair labor practice orders to the board. So, in our view, the text of Section 10 F of the Act does permit a finding that it applies to rulemakings. It doesn't necessarily command a finding that it applies to rulemakings. We're not going that far, but it does permit a finding that it applies to rulemakings. And the Act's context provides no firm indication of a congressional intent to bifurcate review. The section, the reason why, we know the reason why Section 10 F was placed within Section 10 of the Act, and the reason why is the reason that the Supreme Court articulated in the original AFL case in 1940, which is that judicial review is placed in Section 10 of the Act in order to ensure that it could not be employed to review certificates of election results, which the Congress found, and it's discussed extensively in the Act's legislative history, that Congress found that courts were delaying certifications of unions under the precursors to Section 9 of the Act, and Congress wanted to avoid judicial review of those types of certifications. It was not considering judicial review of rulemaking when it structured judicial review provisions, and as this court articulated in New York Republican State Committee, there are a lot of statutes from that era of history, of congressional history, that don't directly address the issue of where rulemaking jurisdiction is to be located because Congress wasn't considering the issue. And finally- Oh, go ahead. No, please. Isn't the question not just rulemaking versus orders, but this provision that you're relying on direct review here in this court is in the whole part of the Act that deals with unfair labor practices and it references unfair labor practices in a manner that really makes it appear that the direct review to us was limited to unfair labor practice cases? So it's certainly true. So there's two issues there, Your Honor, that I would like to unpack. So the first is the issue of where it's located in the statute, and that I think is addressed by the point that I was making regarding the desire of Congress basically to exclude judicial review of Section 9 certification proceedings. The second is the Act's venue clause, and that I will admit is the best argument that AFL-CIO has, is that the Act's venue provision does say, you know, the unfair labor practice in question. However, the Act has a highly flexible venue provision that provides for venue in a variety of different circuits, and in particular, it provides for review anywhere that the respondent resides or transacts business. It's actually very difficult, it's not impossible, but it's very difficult to come up with a unfair labor practice case that actually implicates the unfair labor practice in question venue provision and our view, allowing the the mousehole of a venue provision relating to, you know, a particular very narrow factual circumstance to contain the elephant of requiring that judicial review of rulemakings be conducted in district courts is a bridge too far. Even if it doesn't practically, I mean, I take it that what you're saying now is it may not practically be implicated very often, but even if that's true, the language, I mean, as you sort of acknowledge, it doesn't even say we're in any unfair labor practice occurred. It's the unfair labor practice in question occurred, which makes it sound like that's the universe of things that are being contemplated is unfair labor practices. And then you look to see where the particular one in question occurred, and that gives you a venue toehold, even if it's a practical matter, that particular prong of this may not come into play in every case, but it appears to contemplate that that's the universe of orders that are being considered. So what I would say in response to that your honor is that the, the, the definite article in that section of the statute has never been interpreted, literally, certainly for instance, there are a number of cases where you might have multiple unfair labor practices occurring in multiple different venues. The, the. So I don't think that it. I don't think that the choice of the definite article there is, is, of has ever really been found to be of significance. And, but the key point that I want to reemphasize here. In regards to the issue of, you know, the, I guess in regards to the venue issue. Is that the, we don't think that the venue provision is, is like we agree that it's evidence in support of a FL CEOs position. What we don't agree with a FL CEO on is that it's sufficient evidence to to be dispositive and to overcome the presumption, the powerful presumption in favor of not bifurcating judicial review. So we, we agree that it points in the direction that they're saying points in which don't think the magnitude is sufficient to carry the day here. And if I just one final point, your honors and I see my time has expired, which is that the, the, when you look at the overall structure of the act, it displays a clear preference by Congress to avoid the devoid policymaking by just reports on Labor Act issues district courts are given very ancillary minor roles under the act that don't involve adjudication of questions on the merits of what is and is not permitted under the National Labor Relations Act, it would be an extremely anomalous result to find that those courts had jurisdiction over rulemakings, which would permit them to exercise a kind of jurisdiction that we don't think the 1935 Congress could could ever have intended wasn't the APA and the APA was enacted after the NRA right, which ordinarily places review of rulemaking and district courts.  But I'm not sure whether that I mean, one could argue that that actually plays in the favor of a finding that circuit court review should be permitted here because at the time that the acts passage, it wouldn't have been clear that judicial review and district courts was even necessarily available now I know there was non statutory review and there was there was that was before the merger of law and equity and it was it was a very different legal time period. But if anything, I think that might actually weigh in our favor. Okay, unless my colleagues have other questions for you at this time, we'll hear from Mr Weiss on the merits questions. Thank you, Mr. Thomas. Thank you. Thank you. Thank you, Your Honors. Tyler Weiss on behalf of the National Labor Relations Board. May it please the court. With regard to the merits of this case. This matter concerns the procedure procedures utilized by the NLRB and processing representation cases under Section nine of the National Labor Relations Act, consistent with the act and the guidance provided by the Supreme Court in cases such as Inland Empire v. Millis, the board has long established regulations governing the procedures to be utilized in representation matters. As recognized by the Supreme Court in AJ Tower, shortly after the NLRA passed these representation procedures necessarily involve the balancing of competing interests, such as accuracy in election results, efficiency in reaching final resolutions, and the other occasions in the past to modify its election procedures to better serve these competing interests. AFL-CIO's challenges to these rules ignore two key principles of administrative law. First, that these rules govern election procedures and change no substantive standards for what is required to obtain a certification from the board. And second, that it is the board, and not AFL-CIO, that is tasked with balancing the competing interests that inexorably occur in conducting board elections. Unless the court would like to proceed otherwise I'd like to start with the notice and comment issue and the procedural nature of the board's rulemaking. So with respect to that issue. I think there's the best way to frame the board's rules is to look at them comprehensively and to ask three questions. First, what are the rules do? What the rules do in effect is they modify the procedures for board elections, they reorder steps leading to certification, they change timeframes, and they adjust who is allowed to present positions to the agency. What they do not do is change any of the substantive standards required for obtaining the board certification. The second question is, why did the board pass these rules. And as the board exhaustively explained in its federal register entry. Mr. Weiss can you back up for a minute and just, I don't know if you're able to shed any light on why the board decided in 2011 and again in 2014 to use notice and comment rulemaking and amending its representation procedures and I know that it in at least in 2014 it assiduously said it didn't think it was required to do so but, but do you have any understanding of why that was done. Your Honor, to be honest, I don't have an answer to that direct question as to why the board sought notice and comment rulemaking other than to again highlight the point that you raised that even in 2014, the board did not feel that notice and comment was necessary. And then, prior to both 2011 and 2014, the board had modified its representation case procedures on dozens of dozens of occasions, and had never utilized notice and comment rulemaking any in any of those cases in prior matters, but beyond that I can't speak to the 2014 boards motive and engaging in notice and comment rulemaking. But turning back to the agency's justification for why it passed these rules. These rules are justified by concerns of agency efficiency, uniformity, certainty of guidance to parties, and finality. They're part of a broader effort to organize evaluate questions concerning representation in ways that are most efficient and most logical before the agency. If you look at the dozens of pages that the board drafted in the Federal Register, at no point. Is there any suggestion that these rules are passed to change outcomes in cases, change the substantive rights or the interests of the parties. And then the third question in looking at these rules is what are the effects. And in terms of the substance of the rules, the effects are nothing. As the board itself pointed out in footnote 17 prior rule changes, dealing with timelines and similar issues addressed in these rules had no effect on union win rates. The rules here, apply equally to certification elections and decertification elections and apply equally to all parties, the extent that these can I ask you a specific question about the certification timing change. There, the AFL is the AFL CIO talks about the right of recognition of picketing right which might be affected by the timing of the certification Can you speak more to why that is not a substantive change. Certainly, Your Honor, and as we addressed in our briefing, we cited to a, it's been long standing for precedent that the pendency of a representation case petition actually privileges recognition of picketing I believe the case is international hard carriers and and it was addressed in our briefing, I believe, and by privileges you mean that that such picketing can go on, even while the certification is delayed. If the certification is delayed. So there's no substantive impact on the picketing. That's absolutely correct, Your Honor. Mr Reese you refer to these as as certification case procedures, I think, in the brief it actually referred to them as election procedures and it seems like there's a lot of, you know, daylight or different spin on on them, depending on how you think of it. The, the challengers here refer to, you know, time for campaigning among potential members of a, of a unit. They refer to, you know, the period of time under which they function represented by their chosen union. And those are all things that are really at the heart of what the act protects so You can say it just has to do with timing, but they're talking about the timing of the very ultimate entitlements that the act is about. Why isn't that a reason when we're obligated to construe exceptions to notice and comment rulemaking narrowly. Why isn't that a reason to say, well, this isn't really limited to agency procedure. Well, Your Honor, a couple of points in response to that. First, with, I believe, with regard to the time for campaigning issue, which I think generally attaches to the extension of time between the decision and direction of election and the election itself. That extension of time applies equally to all parties. It gives the union additional time to campaign and it gives the employer additional time to campaign. Now that's not the justification for the board's rule. The justification is that the board wanted to have more time internally to rule on requests for review before elections occurred. With regard to the, to the second point, which I think attaches more to the The other thing they talk about getting the member list, you know, and they do make this point that, you know, back in the 60s five days was enough, even when we're dealing with paper records and US Postal Service surely five days is excessive when we're talking about an important period for contacting members. Yes, Your Honor, but a couple of points again in response to that. First, is that given the corresponding extension in time between the petition being filed and the, or excuse me, the, the issuance of the decision and direction of election and the election that that the union actually has as much time or more time with that list between when they receive it and the election than they did under the under the prior rules. It has a week less than that, or it has several days less than the employer. Well, the employer has that information by default. Exactly, exactly. So the employer has the information ahead of ahead of the union is what I'm saying. Yes, but that's the case, regardless of the timeline of when the list is being provided. And I think it's important to look at the board's explanation for why the list. Why the time period for the list was extended and that justification rests almost entirely on not having to rerun elections, which is an internal agency concern. What happens when there's inaccuracies in a voting list is that oftentimes the board, the issue will be litigated. And then if those inaccuracies or issues in the list are substantiated, then the agency has to go back, do everything all over again, which obviously implicates substantial efficiency interest for for the agency. And does the does the record identify any cases of of that happening during the period under the shorter time? I apologize, Your Honor. Not specifically, but the record does identify several cases in which the board noted where employers had had difficulty complying with the list. Given the short period of time, including I believe was a five thousand person bargaining unit with Harvard and then several other multi location units that are explained in the Federal Register. And if I may, I'd like to. Why does the rules on that? It's it says absent extraordinary circumstances. So is that a is that an extraordinary circumstances caveat that was actually practically in use? I can't speak to the exact circumstances of the of the Harvard case in particular, whether that explicit exception was implicated in that list. My understanding is and I may be mistaken, but I believe that the employer was able to comply with with the with the list requirement in that case, as the board indicated in its rulemaking. And I'd like to see that I'm out of time. So if the court would like to me to address any of the other remaining issues in the case, I'd be happy to or I can continue. I'd like to hear about the statutory argument about the the impounded ballots, because as I read it, the the rationale in the briefing and the rationale and the rule are quite different. Yes, Your Honor, there is some I'll admit some daylight between what the board stated in the rule and and what what we have argued in briefing. But that being said, our arguments as to the the meaning of Section three B are plain language arguments. They're arguments about what the statute of the text actually says. It's not it's not a Chevron step to argument about, you know, deference being owed to the agency based off of its interpretation of the rule. What we're arguing is that the literal text of the statute, as at least as our primary argument that the literal text of the statute does not apply to what the board here did here, that there is, in fact, no stay of an action taken by a regional director. And I think I think it's that word taken that carries all the weight in this case, because if the statute said that if the statute prohibited stays of any action by the regional director, then you would have likely an issue because the impoundment provision is affecting actions that are happening in the future. But when you add the word taken into the statute, the only natural meaning of that term is to apply it to actions that have already occurred. That's not the way that taken is used in that statute. That's a grammatical error. I mean, the it's a past participle being used here to form the passive voice. Because, you know, it's it's like the actions that the regional director takes or actions taken by the regional director. It's just flipping the order of the sentence. And indeed, when you're talking about something like stay typically it's action that's either presently ongoing or upcoming because otherwise if it's fait accompli, it's not really stay worthy at all. So it seems actually if we're looking at clear language, it seems like and we had to choose a clear reading. It seems like a clearer reading is that taken is being used there in an adjectival form to to allow to allow the drafters to use the passive voice. And, you know, we've we've recognized that I think the Supreme Court recognized that in that Henson versus Santander consumer, which I don't think a party cited, but it's 137 Supreme Court 1718 at 1722. It's a it's a 2017 case explaining that it's technically a present tense when used that way. Well, thank you for that citation, Your Honor, and just a couple of brief points in response to that. The first is in the event that the plain language doesn't answer the question present presented by this issue. The board did explain briefly in its rule, why the impoundment provision is not in fact to stay and that that is because the, and this is actually at the deferred appendix page 210. There isn't a stay in this case because the election is going forward. And that, you know, the regional directors continue to act. They're just, I believe that we're the excuse me, the word the board uses is that it's simply postponing the count is the board. But it's the postponing of the count that is being, I mean, it's the it's the count that's being stayed. And so that that distinction on its face, it's actually to actually make no sense at all. This is not a stay. It's just a postponement. That, in essence, that is what the board has said in its rulemaking. I don't know. I read it to be saying and and I didn't find that to be supportive of the rule. With respect to the board, though, the board would have the, the board has the authority to conduct elections itself right or it can delegate that authority to regional directors. That's correct. And so can they also I mean presumably since that authority to the regional directors only a delegated authority, they can also the board can also condition, how it delegates its authority to regional directors in the conduct of elections. That's absolutely correct, Your Honor, as was addressed by the Supreme Court in a case called magnesium casting that we said it in our brief on the extensively discusses on the three be delegation by the two regional directors. And just, just a practical point in response to to judge coloreds questions impoundment is something that occurs in board elections, regardless. It was the historical practice of the board for decades before the before the 2014 rules were enacted. In fact, in under those rules, anytime a request for review was filed all ballots were impacted. Even under the 2014 rules as the board discusses ballots were being impounded at the end of elections to preserve important interests such as voter secrecy and and ensuring that that there wasn't a spoilage of the overall election based off of for example challenge voters. And so, when that happened, was that because the board was ordering that they be impounded. No, Your Honor, that was that was a product of the of the general counsel, determining that impoundment was necessary so the agency is bifurcated between the board, and then, and then the general counsel's office, and that was actually general counsel policy memo that that directed the impoundment procedures under the 2014. But not not exercising board authority, so it's not an application of the statutory provision that says unless specifically ordered by the board. Well, I think that would depend on how the phrase, the board is interpreted within the context of that statute sometimes the board is interpreted to meet the five member decision making body sometimes the board is interpreted to to mean other other other terms. But how does the board. I mean the general counsel is not the board. Presumably, that's correct, Your Honor. So it's not it's a divorce, it's not an application of that provision. But because as you understand that provision, it doesn't. The general counsel is distinct from that. These were just this was just the general understanding that was in effect was that impoundment was just something that was available. And it was being done. I believe that to be the case, Your Honor, if I'm understanding your, your question correctly but but I think I think the larger point that I wanted to make was simply a practical one that impoundment is a necessary artifact of running representation elections in board proceedings. Did anyone challenge after 2014, the use of impoundment under the 2014 rule is being inconsistent with the statute. Not that I'm aware of, Your Honor. And in fact, under the board's historical practice, although I haven't done full research on it, I'm not aware of anybody making this particular argument and in prior cases, either when there was an even broader impoundment provision that was in effect for four decades. Those cases may exist, but I'm not aware of them. Thank you. Make sure my colleagues don't have additional questions for you, Mr. Weiss. Thank you. Thank you, Mr. Weiss will hear from Mr Ginsburg. Thank you and may it please the court Matthew Ginsburg on behalf of the American Federation of Labor and Congress of Industrial Organizations. I'm of course happy to take any questions on jurisdiction. However, we brief the issue fully and if there are no questions I'd like to move directly to the merits as this court, whatever it decides on jurisdiction will have to address the merits. If that's if that's okay. Okay, great. So to begin, the district court was correct in its determination that notice and comment was required for the five provisions that we've challenged in this litigation. The challenge provisions all directly address how regulated parties engage in the primary conduct that's authorized by the National Labor Relations Act, how the parties seek employee support for against certification of the union as the collective bargaining representative in board conducted elections. So in changing the rules in a manner that makes it more difficult for the union to to win the election to win employee support and thus to obtain certification. Each provision encodes a substantive value judgment and alters the right and interest of the parties. And you can see this both from the very terms of what the board did in the rules themselves as we've described in the briefing, as well as how the board has explained what it was doing. And I want to just, I may be limited in time in addressing each single rule, but I wanted to start with the rule concerning the determination of individual eligibility as a prerequisite to obtaining an election. So the board's rule says that normally every individual must eligibility must be determined under the under the new rule, and that is not required by the National Labor Relations Act. Frequently, the status of individuals as supervisors or as in or out of the unit are non-determinative of the outcome of the election. And in those cases, which occur regularly, the parties typically resolve such issues in collective bargaining subsequently if the union, in fact, wins the election. And, of course, if the union doesn't win the election, then the issues are never resolved because they're not determinative. The board – so in and of itself, the board has interposed an additional – Wait a minute. They're never resolved. So you end up having the employer and the union effectively by agreement, including people in a unit that the law does not support should be included. Well, the – let me just step back. So the purpose of the act is to encourage and promote collective bargaining. And so there's a bias towards the parties working these issues out themselves. And as a practical matter, that's what they do. And so the question of whether, for example, an individual employee, to use the board's example from the reply brief mechanics in a broader unit, should or should not be included in the unit typically is – I mean, there are other mechanisms, but typically is resolved by the parties in collective bargaining if the inclusion of those – I think their example was three or five mechanics – is not determinative of the outcome of the election. And that's always been how, as a practical matter, it's worked. And I think part of what goes into that is the thought that the employer and the union are bargaining about the relationship around the bargaining unit and that individuals come and go. People leave employment, come to employment, and their particular status, depending on who the person is, may change. But what's really at stake ultimately in the bargaining is a definition of who is – what the bargaining unit is and who is in and who is out. But aren't there employees whose status legally preclude them from being included, like a manager or a supervisor? And if somebody – if there's a dispute over whether, let's say, cashiers are managers and the union gets voted in and the employer just says, you know, I got other fish to fry, this way at least I'll, you know, be able to communicate with a broader number of workers through these pesky union representatives. And they skip over that, then you're really having union representation for people who are not legitimately covered by the act. That is a possibility in the universe of possibilities. I think in most cases, the parties agree to exclude supervisors because obviously if the employer really wanted to go to the wall on the issue, they could go to the board and have them declared ineligible. But again, what is at stake – Would individuals go to the board and say, I am a supervisor, I shouldn't be included, or is that something that's only for the board to do? The parties would – I don't believe there would be any standing for an individual to go and say, I shouldn't be in a bargaining unit. So what's at stake here is that the board has interposed a new process, a new requirement that the petitioning party, oftentimes the union, must show in order to get to the election. And not only is this actually a substantive requirement that the union has to overcome to get to the election, but the board actually justifies the provision on a substantive basis. And this echoes what Judge Pillard, you were just referring to, saying that this is important because we have to resolve issues of supervisory status before the election to know who speaks for management. That's an issue of how the parties communicate with voters. And I guess I'm not here to say that that might not in certain circumstances be an important issue to resolve, but it is a – that is a substantive basis for this change and one that ought to have been subjected to notice and comment. How the board goes about determining when it is important to decide these issues prior to an election. We have a certain perspective, and I'm sure it's distorted since, you know, as the briefing emphasizes only what 10% of elections go forward, other than by agreement to procedures. But we've had cases that were litigating, for example, the question of who's a supervisor. And they took years, right, because they go before the board and they go to us. And so in a case like that under this rule, would the election be on hold for all that time? Potentially, and that goes to the interplay, and maybe that's a good segue for me to move to the certification rule, which relates and which the court has asked my friend about as well. So, you know, the certification rule – Before you – I think this will facilitate the transition too, I think. But our decisions on the drawing the line between procedure and substance in this context I think recognize that it's not a black and white principle, that there's fluidity there and you have to take into account some contextual considerations. But one common theme is that – one common recognition is that procedural changes can beget substantive consequences, but that still doesn't make them non-procedural. And the easy one that's substantive is when the ultimate substantive standard is in fact changed.  And both on the one that you just talked about and the one that you're going to talk about, I don't think the ultimate substantive standard changed because the standard for issuing certification still remains the same. Now, the fact that certain issues have to be worked out in a different temporal space can have substantive implications. But the question that is in my mind is, how do we know whether this is a procedural change that has – because I think everybody also agrees that you can call these procedural changes. And then the question is, is it a procedural change that doesn't involve a change of the substantive standard but still has the kind of substantive effect that would render it categorized as substantive rather than procedural? Because what you said so far I think still doesn't deny that the substantive standard at the end of the day didn't change. What you're sort of saying is that this has substantive implications, and from your perspective, important ones. And it's just for our purposes we have to figure out whether those kinds of substantive implications are enough. Yes. Okay. So I'm going to quarrel a little bit with the question. I do think by requiring the board to determine individual eligibility issues in all cases that that is a change to substantive standards. Because as I've explained, in the vast run of cases, those individual eligibility issues, when they're non-determinative, which they typically are – not always, but typically are – never are resolved by the board. They've said, you must do this. This is something new that was not true before. But even if I were to accept your premise that that could be categorized as a procedural change – Because I think procedural changes – it's just true that sometimes there are procedural changes that result in issues being decided that may not have been decided before because it's still a procedural change. Any timing issue can mean that an issue that would have been decided before isn't going to be decided now because somebody might be out of time under the old rule but not under the new one, or vice versa. I don't want to quarrel too much because I'd like to answer the other part of your question, but I will just a little bit more, which is that if the board were to have said, before any election – we will order any election, we must determine the status of anyone the employer alleges to be a supervisor, I would argue that that was clearly a substantive change. It exists nowhere in the law. It's not about timing. It's about a substantive determination that must be made as a prerequisite to the election. And as I read the board's rule, that is, in effect, what they've done here. They say these individual issues must be determined before and give specifically the example of supervisors. So I'm quarreling, but to go to the second part of your question, the reason that even though one might characterize some of these provisions as procedural seen in a certain light, why they are substantive and should be subject to notice and comment rulemaking is because they all involve the primary conduct that's regulated by the Act. So this is not about the timing of when a request for review must be filed or how many pages may be filed or whether a response is permitted, which are sort of the secondary aspects of the board's election procedure. These are the primary aspects. These are, can you get an election? What must be determined to get an election? When do you get the voter list, which provides the union, as the Supreme Court has said, with the equal access to speak to employees that the employer already has? What is the time period for campaigning between when the decision for election issues and when the election takes place? These are all the primary aspects of the process under the Act. Can you explain why three days on the voter list makes a difference? I understand that you care a lot about it, but from a distance, some of these, I just, I have the impression from both parties that this is a much more, you know, intensely fought terrain than one might think. And it just, at least I would find it helpful to understand a little bit more about why that is. Yes. So not just the three days, but for example, this timing of the certification of election results as well. Yes. So, so on both sides, I'll take those in turn. So on the voter list. So obviously, as we've always already been said, the employer has full access to the employees. What the employer may not know until soon before the petition is filed is that the employees are organizing a union. So as soon as that trigger occurs, the employer has the ability to campaign amongst its employees up and running, whereas the union is always playing catch up. And so you're talking about within a limited time period of the election campaign, the ability of the employer to get out ahead of the union in terms of communicating its message to employees. And in that sense, it's extremely significant. It would be as if in a political election, one party was said that you can't start campaigning until, you know, five business days after the other party. We would, I think, all see that as being a significant impingement on the right of one party. Mr. Ginsburg, as you pointed out, the union has the advantage sometimes before the employer in terms of the employer may be unaware that employees are moving to organize or to unionize, right? So, I mean, there's a different advantage for the parties at different points. Again, not to be quarrelsome, but so the purpose of the voter list principally is that very typically the union does not have access to all of the employees or how to communicate with them. So they may have limited access, you know, depending on the workplace coming in and out of work, or there may be whole groups of employees who the union just isn't aware of until the list is turned over to the board and then list is turned over to the union. So I take your point. I mean, the union, obviously, in order to file a petition has to be speaking with some of the employees, but to win an election, you need a majority. And as the court recognized in Wyman Gordon way back in the 60s, it's just given the structural setup for the union to have a fair opportunity to talk to the employees during the campaign period. They need this veteran list. It's extremely important. Can you also speak to the question? So with the election observer rule, can you, on your view, does that change affect the union and the employers in a different way? Because it seems like a rule that applies equally to all parties. And I'm just wondering if you think that there is some kind of differential impact on the union from that rule. Because I think under some of our cases, at least, when a procedural rule has different impacts, that can be a reason for considering it to be substantive. So without getting too far into the weeds, it does. And it does in different settings. I mean, the issue of whether or not the union can have a non-unit employee oftentimes comes up in elections where the employees are very scared to sit up there at the table and be visible in front of the employer and its management. And so having the opportunity, for example, to have a former employee, someone who perhaps was left prior to the organizing campaign, or in some instances, a union staff member, makes a difference and sends a message to the employees who are voting that this is a fair election, that both sides get representation. But I think the main point is we would have things like that to say to the board if they had put this out as a proposed rule for notice and comment. It is, in fact, a very detailed area of the law, of the board's law. But to just change that important substantive part of the election procedure, I mean, it's the final. It's the employees coming in to vote and who they see representing each party without even asking for notice and comment from the parties was the violation here. I know my time's expired. If I could quickly speak to the certification issue. Yeah, please. OK, so the issue with the certification is that by telling the regional directors that they cannot certify the election results while a request for review is pending, deprives the union, firstly and most importantly, of the statutory right to bargain with the employer. That that right under the statute attaches when the union is certified. And of course, that's what that's what this is all about, is the opportunity to bargain with the employer. So that and that's a that's a right that can be enforced under the unfair labor practice provisions. And so by preventing that it's it pushes that down the road. And that's extremely important because it's hard to bargain a first contract. Employees are scared. They're looking to the union to see whether the employer is going to deal with the union, whether this was actually something worth fighting for and whether at the end of the day they're going to get an enforceable agreement. So pushing it off. Does it prevent it? Because the argument that the board makes is the employer is always at risk in this situation. So it doesn't actually prevent it, because if the employer doesn't, then it's at risk at the end of the day of being found to have been in violation. So just and I apologize for the to delve into the weeds of the doctrine, but they're very important weeds, particularly on this point. So the board is speaking of the the duty to not make unilateral changes to existing existing working conditions. And we agree that that attaches at the time of the election. But this is about bargaining a contract. This is the going forward, why people organize the union. And that right attaches at the point of certification. That is a different right. That's the key right in the statute. And so by pushing that down the road in every case automatically under this rule, that is a substantive change to the basic right that's protected under the under the act. I wanted to quickly address the 8B7, the unfair labor practice for recognition and picketing in aid of bargaining. The argument and I would just draw the court's attention to the text of 8B7 itself. That that is a prohibition against unions. It says you may not pick it in order to require an employer to bargain with you, the union, unless you are currently certified where there's been an election in the previous 12 months. And so our point is, is that a union who is certified and the union and the employer refuses to bargain can put up a picket line and say, come on, you got to bargain with us. They can exercise their their collective power to get the employer to the bargaining table under the clear text of 8B7. But if the union is not certified because there's been an election held in the prior 12 months, they are not they are prohibited by the plain language of 8B7. The cases that the board cites are cases that have to do with recognition picketing prior to the filing of a petition. Those are different cases. They're not on point. So our only point there. And again, our primary point has to do with the duty to bargain upon certification. That's really the meat of the matter. But I just want to clarify. It doesn't care that if you bargain that whatever terms you get would then date back. Do they date back to the time of the election? No, I mean, no, I mean, employee. I mean, the employer, I suppose, theoretically could agree to that. But that's not typically the practice. No. And again, it's both. It's both literally the employees are not getting the benefit that they would achieve through a collective bargaining agreement. But it's also that it is very difficult for a union to maintain the cohesion during that period. If if the employer can be going around saying, well, you're not even certified yet. We don't have to bargain with you yet. And that drags on and on and on. That's why certification is so important. So on the recognitional picketing, just to back up, you said that you can't pick it unless you're currently certified and that the cases that the board refers to about the pendency of a representation petition don't apply after there has actually been an election and before it's been certified. That's correct. And that's that's 8B7 subsection B. So it's a different subsection of the of the statute. I grant you this is not something that is, you know, is prevalent in the case law, but it is a it is in the statute. It is a right in the statute. And it goes to the fact that it's all it's all key to the fact that certification is so important in order to commence bargaining. And the unfair. So you had I think there were four categories. You talked about unilateral changes. Unfair labor practices, recognitional picketing and bargaining and maybe in the bargaining being the most important. Yeah, they're they're just no duty. No duty to bargain and any results of bargaining don't come into effect until bargaining has concluded. That's correct. Again, I would really emphasize that is that is the key point. And just to go back to to what the board in the preamble said about the rule is they said this rule is all about shifting the risk from the union to the employer. We don't think the employer ought to have to bargain. If there's any with the union, if there's any possibility that the the decision might later be overturned. Of course, the flip side of that is that, you know, the union that is not entitled to bargain with the employer and throughout the board acknowledges it's very In a reverse way. It's shifting the risk to the union from the employer. Yes, if I may have misspoke. Yes. So shifting. Yeah, yes. My time is up. So I don't want to, I'm happy to address the three B point and others, but I don't want to overstay my welcome. Make sure my colleagues don't have additional questions for you. Okay, thank you, Mr. Ginsburg. We'll hear rebuttal from the board. Mr. Thomas, I think your proportional allocation is one minute. Yes, your honor. Although I, I note that the union didn't really make any particular points in its argument. So I would just open it to the open the floor to the panel. If there are any additional questions on jurisdictional issue. I guess I have one for you, Mr. Thomas, which is The How is section 10 F ambiguous in any relevant in any relevant sense if it were ambiguous, then we read it in favor of going directly to the Court of Appeals. What is the argument that it is ambiguous, though. The reason why it's ambiguous, is that the Key jurisdictional section of that of section 10 F speaks only to a final order of the board granting or denying the relief sought, it does not require that that final order be in the context of unfair labor practice proceeding. There are, as we said, surrounding implications in the text and where it's located in statute that might sort of imply that it It applies to unfair labor practice cases, but the text itself. The key sentence there does not limit it to unfairly practice workers and that's why we believe it's ambiguous. It seems, I mean, it's a little tricky and maybe you can help me think this through, but it seems like the default rule is That you first go to the district court and that's just as a result of 1331 and we don't lightly Remove jurisdiction without a clear legislative directive, but then we have this overlay rule in the New York Republicans case that says, you know where there is a directive that you go to go initially to the Court of Appeals. And there's sort of ambiguity about the scope of it. You read it amply And so I guess you're saying, so how do you get over the first of those, though, it seems like ambiguity isn't enough to overcome the default rule that people seeking review of agency action go first to district court. So the, it may be helpful to think of it in in kind of the terms of, for instance, sort of a burden shifting statute or presumption shifting Situation so that the initial presumption is that parties go to district court, unless there is a provision in the statute that provides for direct review. In the courts of appeals, but there's no dispute here that section 10 F is such a provision channels review of Final board orders, certainly in the at least in the unfair labor practice context that channels review to the courts of appeals and the only question is how broadly To interpret the scope of section 10 F in that situation in the situation where the only question is how broadly do we interpret the scope of a direct review provision that everyone agrees exists. The, the presumption is that the direct review statute applies unless there's a firm indication from Congress that it should not apply to a particular category of cases. Thank you, Mr. Thomas, let me make sure colleagues don't have additional questions for you. Thank you, Mr. Weiss will will give you three minutes. And if I could just ask you to make sure to address. The point made by emphasized by the AFL Mr Ginsburg on behalf of the AFL, it would help me to understand the response to the point that the duty to bargain kicks in on certification and that's what's principal what largely at stake here. And that's why the Shifting the certification has a significant substantive consequence because there's no duty to bargain in the absence of the certification to begin with. Yes, Your Honor. Certainly, I'd be happy to respond to that. I think there's the most immediate response to that point is that a employer. Looking at the position of the employer in these cases. So, so this issue comes up when an employer has filed a request for review challenging the validity of a bargaining obligation. And so, or a certification, excuse me. And in those circumstances, as the board notes, it doesn't make sense for the agency to enforce a bargaining obligation. That presents the exact same issue that is being presented in a representation case. And so as a board explained for purposes of ordering its litigation and not having An unfair labor practice case raising the same issue as a request for review being present before the board at the same time. That simply as a matter of administrative convenience. It makes sense. An employer who's filed who has filed a request for review contesting a bargaining obligation. It's simply irrational for them to bargain with the union during well that request for review is pending. With regard to the bargaining obligation. And with respect Wouldn't those two cases, the unfair labor practice of Can you have a situation which you have one case going to district court and one case going to court of appeals that are raising similar issues that Employer refuses to bargain. No, because there's no obligation to bargain under your role. Correct. Correct, Your Honor. And I know both of those issues in the first instance are going to come before the board. And so from the board's perspective, as it explained in its rule, it's simply it along with, you know, removing the confusion from a certification that would later be Unfair labor practice and representation proceedings to proceed parallel to one another. And I think tying back Outside of the bargaining context. I think there's a couple other points to make in response to the certification issue. The first is that outside of this specific bargaining obligation virtually every other meaningful right that attaches to the union representation issue. Goes back to the election. It's not just limited to unilateral changes. As we've indicated in our briefing. There's other rights that attach such as the right to request information other important I'm blanking on the other issues, but I know there are several others that we addressed in our briefing. So it's not simply the obligation to refrain from unilateral changes. There's many other substantive rights that flow back To the date of the election, regardless of when the certification issues and as the board explained issuing a certification while request for review is pending is simply confusing because the board could turn around and revoke that same certification later. And that was a situation that had come up in several cases. Any sense of the The win loss rate of these challenges. I mean, I do you know there is a waiting game, especially in in low wage work where there's a lot of worker turnover for, you know, maybe advantageous with a very slim case for an employer to challenge representation. And, you know, just, just make the employees who stuck out there next to vote for a union feel like and what did I get for it. I'm not seeing anything you know months go by. Does the board have any sense of sort of on average, how often these challenges to representation succeed. I don't have that information, Your Honor. And that's not in the record of the rule at all. I do, I do not believe so, Your Honor. What is in the record is that the rules prior rule changes of a similar nature have not affected the unions when rates in elections and achieving certifications. Right. But, but I took you to be to be talking about not the win loss rate, but the confusion from a certification later revoked and the question I have is sort of, well, you know, has, is that does that happen a lot. Is that a big problem or not. And there's not really, there's not anecdotal or descriptive information about that. I believe that's correct, Your Honor, the board was exercising its institutional expertise in terms of, you know, making a policy judgment about, but you're not aware of the grounds for that expertise that the substantive thinking behind that other than the logic of it that you recounted. What's the logic and the explanation that the board is placed in the Federal Register and obviously the deference that is due to the board in these areas. And if, if I may just respond very briefly on two more points. The first is with regard to the litigation of status issues in the pre election hearing. Just a couple of brief points to highlight. The first is that oftentimes these issues actually do come back before the board through what's called the unit clarification procedure, where the parties are unable to resolve the status of individuals, then that issue simply comes back before the board and so a lot of the board's motivation in making this rule was to just decide those issues up front and not have them hanging around and having to decide them later. The second point that I want to raise is who files a unit clarification either the unit union or the employer. It could be the union or the employer or and I've handled these and even employees will file them in some situation. Okay. And then the second point is just to correct another brief mistake by opposing counsel, which is that these rules don't this rule doesn't require litigation of these issues in every instance, as the board explained it's it's a normal. Instructs the regions to normally litigate these issues, but also gives an option for deferral and the converse was true under the 2014 rules that the issues were not always required to be deferred and that regions had the regional directors had the discretion to have these issues litigated in certain circumstances. And then the final point I'd like to push back on briefly is the, the primary purpose argument that my opposing counsel made. In particular, I would, I would direct the court's attention to the series of decisions involving the FCC and radio application cases in which The rules at issue, we're dealing with the denial of radio or TV application licenses, such as Ranger VFCC, Neighborhood TV VFCC, Kessler VFCC, and those are, that's obviously one of, if not the primary duties of that agency and so I don't think that's a meaningful distinction under the law of this circuit. And then, and then the last point I'd like to make very briefly, um, with regard to the three be argument and the and the space between there to the extent that there is space between what we've argued, and with what the board wrote in their rule. You'll notice in the briefing that this was never an issue that was addressed in the lower court. And what I'm talking about in particular is the space, the alleged space between what the board said and what we said in our briefing. We never addressed that issue because it wasn't raised until respondents reply brief. The lower court made a Chevron step two finding. We've argued Chevron step one and two throughout our briefing. And the only time that responded made this argument was in its reply brief in the final briefing in this case and so we haven't had an opportunity to brief this case we believe that it's way under the circuits precedent. I apologize for not raising that issue earlier but I just like to flag that for the court is my final remark, unless there's other further questions. Okay, thank you, Mr. Weiss thank you to all counsel will take this case under submission.
judges: Srinivasan, Pillard, Rao